**Opinion filed July 12, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00209-CR

_____

## MATTHEW ROBERT STOVALL, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law**

**Brown County, Texas**

**Trial Court Cause No. 0800797**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant of driving while intoxicated. The trial court assessed punishment at 180 days in the Brown County Jail, probated for one year, and a $1,000 fine. He appeals his conviction in four issues. We affirm.

Trooper David Stewart of the Texas Department of Public Safety was patrolling on Highway 2126 in Brownwood when he noticed a motorcycle that was traveling ninety miles per hour in a sixty-five mile-per-hour zone. Trooper Stewart stopped the motorcycle; Appellant was operating it. When Trooper Stewart approached Appellant, he noticed the smell of alcohol on

Appellant's breath and also noticed that Appellant's eyes were bloodshot. Appellant was also speaking very loudly and was using profanity. In response to Trooper Stewart's question of whether he had been drinking, Appellant stated that he had had two beers. Later, Appellant changed his answer, and he told Trooper Stewart that he had had only one beer and had "started another beer about ten minutes ago." Appellant told Trooper Stewart that he had been at a bar and a restaurant; those establishments served alcoholic beverages.

Trooper Stewart then performed standardized field sobriety tests on Appellant, and those results led him to perform a preliminary breath test on Appellant. After that test, Trooper Stewart arrested Appellant for DWI.

In his first issue, Appellant complains about a supplemental instruction the trial court gave the jury. During deliberations, the jury sent out a note in which it asked about the definition of intoxication:

> In paragraph two, the definition of the term intoxicated, does the final word "or" mean that either not having the normal use of one's faculties, or having an alcohol concentration of .08 or more is sufficient to find that a person is intoxicated? In other words, if we are agreed about one condition, but are not agreed about the other, are we required to convict?

The trial court's response, in relevant part, restated the definition of intoxication:

> The term "Intoxicated" means:
>
> A. not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
>
> B. having an alcohol concentration of 0.08 or more.

The trial court also gave the jury the definition of "public place," which the trial court had omitted from the original charge.

A trial court's substantive response to a jury's question during deliberations is an additional or supplemental jury instruction. *Barrera v. State*, 10 S.W.3d 743, 747 (Tex. App.— Corpus Christi 2000, no pet.); *see* TEX. CODE CRIM. PROC. ANN. art. 36.16 (West 2006). A supplemental instruction may be given if it may be properly given in the original charge. *Barrera*, 10 S.W.3d at 747. The trial court is required to define any legal phrase that a jury must

2

use in properly resolving an issue and to provide the statutory definition if available. *Nejnaoui v. State*, 44 S.W.3d 111, 119 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

The trial court's supplemental charge on the definition of intoxication did not differ substantively from the definition of intoxication in the original charge. The trial court put the definition in the more "statutory" format in the supplemental charge, and as such, it was merely a reiteration of what was in the original charge. We see no error when a trial court gives a proper instruction to a jury in a slightly different format. Because the trial court could have properly given the additional charge in the original charge, there is no error. Appellant's first issue is overruled.

In his second and third issues, Appellant complains of the trial court's admission of the testimony of Trooper Stewart on the accuracy of the field sobriety tests. During the direct examination of Trooper Stewart, the following dialogue occurred:

> Q. Now, in the DWI arrests that you have made -- you said that you have done over 500. In your experience working with intoxicated people, has -- the horizontal gaze nystagmus test, has that been something that you have used frequently in those types of investigations?
>
> A. Yes, ma'am.
>
> Q. In your experience, has that been a fairly accurate measure of whether or not someone is intoxicated?
>
> [DEFENSE COUNSEL] Objection, Your Honor. This is a scientific matter that NHTSA has determined. His personal observation, unless he can give us the statistics that he is basing his opinion on, would not be a valid opinion. There is no proper foundation for that opinion, and we would ask that the only evidence of the validity of the test has been what has been scientifically proven and accepted by the agencies that governs those tests.

After the objection was overruled, Trooper Stewart answered in the affirmative. Later, the prosecutor asked a more general question about the field sobriety tests:

> Q. . . . But, based on your experience working with so many DWIs, have these field sobriety tests been an accurate standard for you to use in determining whether someone is intoxicated?
>
> [DEFENSE COUNSEL]: Your Honor, again, I have to object. He has talked about this organization that has determined the protocol, the standards for

this test, and the reliability and accuracy. He now is wanting to apply his own standards, different from what has been accepted throughout the country as the standard, and we object to him giving his personal opinion, if he is going to give an opinion about this test.

He has got to follow the book. He can't come up with his own numbers and his own experience and his own testing. There is no proof that he has engaged in any scientific testing. With all of the 500 individuals who he claims he has arrested, there is no underlying data, there is no support for his opinion here. We object that it is improper expert opinion.

Appellant's objection was overruled, and Trooper Stewart answered in the affirmative. Appellant argues that it was improper for the trial court to admit the testimony of Trooper Stewart's "personal studies" and that his "scientific theory" was not shown to be reliable under *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. The trial court's decision to admit evidence under Rule 702 is reviewed under an abuse of discretion standard. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152–53 (1999) (applying FED. R. EVID. 702).

The admissibility of expert witness testimony is subject to a three-part test: (1) the expert must be qualified by knowledge, skill, expertise, training, or education; (2) the subject matter of the testimony must be appropriate for expert testimony; and (3) the expert's testimony must assist the jury to understand the evidence or decide a fact. *Bui v. State*, 964 S.W.2d 335, 344 (Tex. App.—Texarkana 1998, pet. ref'd). The expert's knowledge or expertise on a relevant issue need only exceed that of an average juror. *Id.* There is no rigid formula for determining whether a particular witness is qualified as an expert. *Id.*

Trooper Stewart had a total of eleven years experience as a patrol officer for the Texas Department of Public Safety. As a Texas State Trooper, his primary emphasis was on transportation and traffic laws. Trooper Stewart was a certified standardized field sobriety instructor and taught other officers how to conduct the standardized field sobriety tests. He was

4

also certified to operate the intoxylizer instrument.  In his time as a state trooper, Trooper Stewart had made over 500 DWI arrests.

Appellant cites only one case in support of his argument on Issues Two and Three, *Kelly v. State*, cited above.  His reliance on that case is misplaced.  *Kelly* put forth three criteria that must be satisfied before novel scientific evidence can be considered reliable.  *Kelly*, 824 S.W.2d at 573; *Combs v. State*, 6 S.W.3d 319, 321 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) (Supreme Court gives very similar test for expert testimony under Federal Rule 702).  Trooper Stewart's testimony is not novel scientific evidence; it is instead the testimony of an expert who gained his expertise through practical experience and training.  The *Kelly* criteria are inapplicable to this situation.  *See Freeman v. Case Corp.*, 118 F.3d 1011, 1016 n.6 (4th Cir. 1997) (*Daubert* analysis is unwarranted where expert relies on experience and training to reach his conclusions).

In this case, Trooper Stewart's testimony met all the criteria discussed above for nonscientific expert witness testimony.  Trooper Stewart had ample experience and training.  The accuracy of the field sobriety tests was certainly an appropriate area of testimony for a police officer who gained his expertise in large part by observing intoxicated and sober persons and by actually administering the tests to them.  Additionally, his testimony regarding the accuracy of the field sobriety tests in determining intoxication was important for a jury in deciding the issue of intoxication in a DWI case.  Because Trooper Stewart's testimony met the three criteria for proper expert testimony, the trial court did not abuse its discretion in admitting it.  Appellant's second and third issues are overruled.

In his fourth issue, Appellant complains of the admission of a DWI interview form that reflects that he refused to answer certain questions on the form.  A party complaining about the admission of evidence must have made a timely and specific objection to its admission. TEX. R. APP. P. 33.1(a)(1); TEX. R. EVID. 103(a)(1).  A timely objection is one that is made, if possible, before the evidence was actually admitted. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); *Polk v. State*, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987).  An objection made after the evidence has already been admitted before the jury is not timely and does not preserve error. *Mulder v. State*, 707 S.W.2d 908, 913 (Tex. Crim. App. 1986).  In this case, Appellant did not object to Trooper Stewart's testimony regarding Appellant's failure to answer questions on

the DWI interview form.  This testimony was a verbal description of everything that was on the form.  Thus, Appellant failed to preserve error on his objection to the admission of the form.  His fourth issue is overruled.

The judgment of the trial court is affirmed.


ERIC KALENAK

JUSTICE


July 12, 2012

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.